James E. Harward (Utah Bar #4702)
W. Earl Webster (Utah Bar #12274)
HARWARD & ASSOCIATES
10542 South Jordan Gateway, Suite 300
South Jordan, Utah 84095
Tel. (801) 506-3800
Fax: (801) 795-7440
Email: earl.webster@harwardlaw.com
*Counsel for the Plaintiff*

Ali Parvaneh (California Bar #218320)
aparvaneh@madisonharbor,com
James S. Sifers (California Bar #259105)
jsifers@madisonharbor.com
MADISON HARBOR ATTORNEYS
17702 Mitchell North
Irvine, CA 92614
Tel:  (949) 756-9050
Fax:  (949) 756-9060
*Counsel for the Plaintiff – Pro Hac Vice*

---

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DISTRICT

---

| | |
|---|---|
| NOBLE GATE INDUSTRIAL (SHENZHEN) CO., LTD., a foreign limited company, Plaintiff; <br><br> v. <br><br> CIRTRAN BEVERAGE CORP., a Utah corporation; PLAY BEVERAGES, LLC, a Delaware limited liability company; and Does 1 to100, inclusive, Defendants. | **COMPLAINT** <br><br> Case No. 2:14-cv-00132-TS <br><br> Judge Ted Stewart <br><br> JURY TRIAL REQUESTED |

COMES NOW Plaintiff Noble Gate Industrial (Shenzhen) Co., Ltd. ("Plaintiff"), by and

through its counsel, and complains against Defendants CirTran Beverage Corp.; Play Beverages,

LLC; and Does 1 to 100, inclusive (collectively "Defendants"), and allege as follows.

1

## PARTIES, JURISDICTION, AND VENUE

1.      Pursuant to 28 U.S.C. § 1332(a)(2) "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of a State and citizens or subjects of a foreign state[.]"  Pursuant to 28 U.S.C. § 1391(a)(2) "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in…a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

2.      Plaintiff Noble Gate Industrial (Shenzhen) Co., Ltd. ("Plaintiff") is, and was at all times mentioned herein, a foreign limited company, with its principal place of business located at 3206 Building #2 Zhongshan Garden, Huli Rd., Shenzhen, China.

3.      Plaintiff is informed, believes, and thereupon alleges that Defendant CirTran Beverage Corp. ("CirTran"), is, and at all times mentioned herein was, a corporation organized pursuant to the laws of the State of Utah, with its principal place of business located at 4125 South 6000 West, West Valley City, Utah 84128.

4.      Plaintiff is informed, believes, and thereupon alleges that Defendant Play Beverages, LLC ("Play Beverages") is, and at all times herein mentioned was, a limited liability company organized pursuant to the laws of the State of Delaware, with its principal place of business located at 4125 South 6000 West, West Valley City, Utah 84128.

5.      Plaintiff is informed, believes, and thereupon alleges that each and every Defendant named herein, is an agent, employee, employer, and/or in a joint venture with each other Defendant named herein.  Plaintiff further alleges that each act or omission alleged on the

2

part of each Defendant was conducted in the course, scope, and furtherance of the agency,

employment, and/or joint venture in which each other Defendant is participating.  As such,

Plaintiff alleges that each Defendant is vicariously responsible for the acts or omissions of each

other Defendant and has acted in the course and scope of such agency, partnership, or

employment.

6.      Plaintiff is informed, believes, and thereupon alleges, that Defendants CirTran

and Play Beverages operate under the same management and control, that they share agents and

employees, their names are used interchangeably, and that CirTran and Play Beverages are alter

egos of one another.

7.      The events alleged herein occurred in the state of Utah; and the contracts and

agreements addressed herein were executed in the state of Utah.

8.      The contracts and agreements addressed herein include a choice of venue clause

directing that this action be filed in Utah.

9.      Plaintiff is informed, believes, and thereupon alleges that the above-entitled Court

is the proper Court for this action and that the amount claimed is in excess of $75,000.00, the

jurisdictional minimum of this Court.

10.      Venue is proper in the United States District Court for the District of Utah

pursuant to 28 U.S.C. § 1391(b).

11.      The true names or capacities of all Defendants Does 1 through 100 are unknown

to Plaintiff who sued them by such fictitious names.  Each Defendant Doe caused Plaintiff's

injury and damage.  Plaintiff will amend the complaint to allege the true names and capacities of

Defendants, whether individual, corporate, associate or otherwise, when the same have been

ascertained.  Plaintiff is informed and believes and based on that information and belief alleges

that each fictitiously named Defendant is in some manner responsible for the damages alleged.

12.     Each paragraph in this Complaint is incorporated by reference in each other

paragraph.  Each allegation for each cause of action is incorporated by reference in every other

cause of action.  Despite the labels on the causes of action and section headings and dividers, the

complaint, and the remedies sought are to be read as one unit.  To the extent any cause of action

stated herein is insufficiently plead, but such lack of sufficiency can be satisfied by other

allegations stated in the Complaint, that other allegation is incorporated by reference into the

insufficient cause of action to cure the insufficiency.

13.     All paragraphs are incorporated by reference in all other paragraphs herein.

### GENERAL ALLEGATIONS

14.     Plaintiff is informed, believes, and thereupon alleges that on or about November

1, 2006, Play Beverages entered into a Product License Agreement ("Playboy License") with

Playboy Enterprises International, Inc. ("Playboy, Inc."), pursuant to which Play Beverages

licensed the use of Playboy, Inc.'s trademarks on certain beverage products.

15.     Plaintiff is informed, believes, and thereupon alleges that CirTran is in the

business of manufacturing, advertising, marketing, distributing, and selling Playboy, Inc. brand

beverages under the Playboy License. The primary beverage product manufactured and sold by

CirTran is the Playboy Energy Drink.

16.     On or about June 1, 2012, Plaintiff and Defendants entered into a Manufacturing

and Distribution Agreement, a true and correct copy of which is attached as EXHIBIT NO. 1

("Agreement"), whereby Plaintiff was granted exclusive territorial sale and distribution rights to

the Playboy Energy Drink in all cities and towns in China, Hong Kong, and Macau

("Territories").  Pursuant to the terms of the Agreement, Plaintiff's exclusive distributorship was

to remain in effect for an initial ten year term.

17.     As consideration for Plaintiff's exclusive sale and distribution rights, per the

Agreement, CirTran was to receive certain royalty payments from Plaintiff.  These royalty

payments include a base annual fee and an additional fee to be paid per can of Playboy Energy

Drink sold by Plaintiff.  For the First Contract Year, Plaintiff was required to pay CirTran

$500,000.00 for the base annual fee and royalties of $3.00 per case or $0.125 per can of 250 ml

cans and $4.00 per case or $0.167 per can of 500 ml cans, with no minimum volume requirement

for the First Contract Year.   In accordance with the Agreement, Plaintiff made its first

$250,000.00 royalty payment to Defendants for the First Contract Year on June 8, 2012.  It was

further agreed that the second royalty payment of $125,000.00 for the First Contract Year would

be due September 1, 2012, and a third royalty payment of $125,000.00 for the First Contract

Year would be due December 1, 2012.

18.     In  August of 2012, Plaintiff and Defendant CirTran, by and through its principal,

Iehab Hawatmeh, orally agreed that if Plaintiff paid the remaining balance of $250,000.00 for the

First Contract Year royalty payment in September of 2012, the Agreement would be amended

such that the start date for the contract would be extended from June 1, 2012, to the date upon

which Plaintiff procured all necessary licenses and authorizations for importing, manufacturing,

and distributing Playboy Energy Drink in the Territories.  The extension of the start date would

extend the time for royalty payments and contract minimum requirements under the Agreement.

This second agreement concerning accelerated payments of royalties and corresponding

extension of the start date of the Agreement was confirmed in emails between Mr. Hawatmeh and Plaintiff's principal, Mr. Sameer Alshun ("Extension Guarantee").  True and correct copies of all emails making up the Extension Guarantee are attached as EXHIBIT NO. 2.

19.     In reliance on Defendant CirTran's promise, on or about September 1, 2012, Plaintiff paid Defendant CirTran $125,000.00 for the second royalty payment.  Plaintiff paid Defendant CirTran the third royalty payment of $125,000.00 on or about September 8, 2012. *See* EXHIBIT NO. 3.

20.     When executing the Agreement, Plaintiff was unaware that Defendants were actively involved in litigation with Playboy, Inc. over termination of the Playboy License ("Playboy Litigation").

21.     Plaintiff is informed, believes, and thereupon alleges that in or around April of 2011, creditors of Play Beverages filed a petition commencing an involuntary Chapter 7 bankruptcy proceeding against Play Beverages, which Play Beverages converted to a voluntary Chapter 11 bankruptcy.  That case is entitled *In Re Play Beverages, LLC*, United States Bankruptcy Court, District of Utah, Case No. 1126046 ("Bankruptcy Action").

22.     Plaintiff is informed, believes, and thereupon alleges that on or about June 7, 2011, Playboy, Inc. notified Defendants that the Playboy License had expired due to Play Beverages' failure to make royalty payments to Playboy, Inc.

23.     Plaintiff is informed, believes, and thereupon alleges that on or about August 29, 2011, Play Beverages initiated an adversary proceeding against Playboy, Inc. in the Bankruptcy Action, alleging that Playboy, Inc. had breached its contractual obligations and tortiously

interfered with Play Beverages' distribution network.  Playboy, Inc. filed a counterclaim in the Bankruptcy Action against Play Beverages.

24.     Plaintiff is informed, believes, and thereupon alleges that, pursuant to the licensing agreement between Play Beverages and Playboy, Inc., the initial term of the Playboy License expired on March 30, 2012.  Plaintiff is informed, believes, and thereupon alleges that the term of the licensing agreement was then extended to July 31, 2012.

25.     Plaintiff is informed, believes, and thereupon alleges that in July of 2012, Play Beverages and Playboy, Inc. entered into a second extension agreement for the Playboy License, providing that the Playboy License would expire on September 30, 2012.  The second extension agreement further provided that the Playboy License would end on an alternative date if Play Beverages obtained an order confirming its Chapter 11 reorganization plan by September 30, 2012.  Alternatively, the extension agreement provided that it would terminate automatically if Play Beverages' proposed reorganized debtor failed to make a $2,000,000.00 payment into escrow for the benefit of Playboy, Inc. within a specified timeframe.

26.     Plaintiff is informed, believes, and thereupon alleges that in August of 2012, a new license agreement was executed between Play Beverages and Playboy, Inc. extending the Playboy License. The agreement called for Play Beverages to pay $2,000,000.00 to Playboy, Inc. by a specified date in late September to early October of 2012.  Play Beverages failed to make the $2,000,000.00 payment to Playboy, Inc.

27.     Plaintiff is informed, believes, and thereupon alleges that on or about October 15, 2012, Playboy, Inc. terminated the Playboy License with Play Beverages.

28.     Plaintiff is informed, believes, and thereupon alleges that Play Beverages'

Chapter 11 Bankruptcy proceeding was dismissed by the Court in December of 2012.

29.     Plaintiff is informed, believes, and thereupon alleges that the Playboy Litigation is

currently being litigated outside of the Bankruptcy Court, in *Play Beverages, LLC, et al. v.*

*Playboy Enterprises, Inc., et al.*, Illinois Superior Court, Cook County, Case No. 2012L012181

("Illinois Case") Plaintiff is informed, believes, and thereupon alleges that CirTran is a plaintiff

in the Illinois Case.

30.     Neither CirTran nor Play Beverages informed Plaintiff that Play Beverages was in

bankruptcy prior to Plaintiff's execution of the Agreement or prior to Plaintiff's tendering of

royalty payments to CirTran for the First Contract Year.

31.     Neither CirTran nor Play Beverages informed Plaintiff of the Playboy Litigation

prior to Plaintiff's execution of the Agreement or prior to Plaintiff's tendering of royalty

payments to CirTran for the First Contract Year.

32.     Due to the Playboy Litigation, Plaintiff has been unable to secure necessary

funding in order to manufacture, market, and distribute Playboy Energy Drink in the Territories,

as investors and financiers have indicated an unwillingness to lend or invest in a trademarked

product which is being actively litigated.  Further, the Playboy Litigation delayed Plaintiff's

ability to obtain necessary permits and licenses in the Territories to manufacture and distribute

Playboy Energy Drink.  As a result, Plaintiff has been unable to enjoy any of the benefits of the

Agreement, as it has been unable to manufacture or distribute the Products, despite having paid

$500,000.00 to Defendants for the rights to do so.

33.     Despite the delays resulting from the Playboy Litigation, in or around March to April of 2013, Plaintiff was able to obtain the necessary permits and registrations to manufacture and sell Playboy Energy Drink in the Territories.  Pursuant to the Extension Guarantee, the Agreement was to be amended such that the new start date for royalty payments and contract minimums would be advanced from June 2012 to March/April 2013.

34.     On or about March 30, 2013, Defendants unlawfully terminated the Agreement.

**FIRST CAUSE OF ACTION**
**BREACH OF WRITTEN CONTRACT**
**(Against All Defendants)**

35.     Plaintiff incorporates by this reference the other allegations set forth in this Complaint.

36.     On or about June 1, 2012, Plaintiff entered into a written Agreement with CirTran and Play Beverages, granting Plaintiff manufacturing and distribution rights to the Playboy Energy Drink.  *See* EXHIBIT NO. 1.

37.     The Defendants breached the Agreement in various ways, including but not limited to:

a.     Failing to inform Plaintiff of the Bankruptcy Action at the time of execution of the Agreement, in violation of Section 8.1 of the Agreement;

b.     Failing to inform Plaintiff of the Bankruptcy Action prior to Plaintiff's tendering of $500,000.00 to Defendants for First Contract Year royalty payments, in violation of Section 8.1 of the Agreement;

c.     Failing to obtain approval of the Agreement from the Bankruptcy Court, as required by 11 U.S.C. § 363, which states that a debtor-in-possession must obtain

approval from the Bankruptcy Court prior to entering into any transactions outside the ordinary course of business, in violation of Section 8.1 of the Agreement.

d.      Failing to inform Plaintiff of the pending Playboy Litigation prior to Plaintiff's execution of the Agreement;

e.      Failing to inform Plaintiff of the pending Playboy Litigation prior to Plaintiff tendering $500,000.00 to Defendants for First Contract Year royalty payments, in violation of Section 8.1 of the Agreement;

f.      Failing to provide support to Plaintiff, including assistance in procuring applicable permits and registrations for manufacturing and distributing Playboy Energy Drink in the licensed Territories, as provided in Section 6.2 of the Agreement;

g.      Terminating the Agreement without cause prior to the expiration of the initial ten year term, as provided in Section 4.1 of the Agreement;

h.      Failing to provide additional reasonable time for Plaintiff to meet minimum sales requirements and product launch commitments due to sales delays resulting from regulations within the Territories, as provided in Sections 4.4(b) and 5.1 of the Agreement; and

i.      Failing to amend the Agreement per the Extension Guarantee, to extend the start date for the Agreement to March or April of 2013, when Plaintiff obtained all necessary permits and registrations to operate within the Territories, as agreed to in consideration for Plaintiff tendering the $250,000.00 balance of the First Contract Year royalty payment in September of 2012.  *See* EXHIBITS NOS. 2 and 3.

38.     Plaintiff has fulfilled its obligations under the Agreement.  Any unfulfilled

obligations are excused by Defendants' breaches.

39.     As a result Defendants' breach of contract, Plaintiff has been damaged in an

amount to be proven at trial, but not less than $500,000.00, exclusive of attorneys' fees, interest,

and costs.

**SECOND CAUSE OF ACTION**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against All Defendants)**

40.     Plaintiff incorporates by this reference the other allegations set forth in this

Complaint.

41.     All contracts include the implied covenant of good faith and fair dealing that

requires the parties to the contract to act in good faith and take the necessary steps to fulfill and

honor their respective contractual obligations. The covenant protects the benefits of the contract

that the parties reasonably contemplated when they entered into the agreement.

42.     Through the Agreement, Plaintiff expected to enjoy the benefits of the bargain.

43.     The Defendants have breached the covenant of good faith and fair dealing by

doing, *inter alia*, the following:

    a.     Failing to inform Plaintiff of the Bankruptcy Action at the time of

execution of the Agreement, in violation of Section 8.1 of the Agreement;

    b.     Failing to inform Plaintiff of the Bankruptcy Action prior to Plaintiff

tendering $500,000.00 to Defendants for First Contract Year royalty payments, in

violation of Section 8.1 of the Agreement;

c.      Failing to obtain approval of the Agreement from the Bankruptcy Court, as required by 11 U.S.C. § 363, which states that a debtor-in-possession must obtain approval from the Bankruptcy Court prior to entering into any transactions outside the ordinary course of business, in violation of Section 8.1 of the Agreement.

d.      Failing to inform Plaintiff of the pending Playboy Litigation prior to Plaintiff's execution of the Agreement;

e.      Failing to inform Plaintiff of the pending Playboy Litigation prior to Plaintiff tendering $500,000.00 to Defendants for First Contract Year royalty payments, in violation of Section 8.1 of the Agreement;

f.      Failing to provide support to Plaintiff, including assistance in procuring applicable permits and registrations for manufacturing and distributing Playboy Energy Drink in the licensed Territories, as provided in Section 6.2 of the Agreement;

g.      Terminating the Agreement without cause prior to the expiration of the initial ten year term, as provided in Section 4.1 of the Agreement;

h.      Failing to provide additional reasonable time for Plaintiff to meet minimum sales requirements and product launch commitments due to sales delays resulting from regulations within the Territories, as provided in Sections 4.4(b) and 5.1 of the Agreement; and

i.      Failing to amend the Agreement per the Extension Guarantee, to extend the start date for the Agreement to March of 2013, when Plaintiff obtained all necessary permits and registrations to operate within the Territories, as agreed to in consideration

for Plaintiff paying the $250,000.00 balance of the First Contract Year royalty payment in September of 2012.

44.     The Defendants' breaches of the covenant of good faith and fair dealing have damaged Plaintiff as Plaintiff has been unable to secure necessary funding in order to manufacture, market, and distribute Playboy Energy Drink in the Territories, as investors and financiers have indicated an unwillingness to lend or invest in a trademarked product which is being actively litigated.  Further, the Playboy Litigation delayed Plaintiff's ability to obtain necessary permits and licenses in the Territories to manufacture and distribute Playboy Energy Drink.  As a result, Plaintiff has been unable to enjoy any of the benefits of the Agreement, as it has been unable to manufacture or distribute the Products, despite having paid $500,000.00 to Defendants for the rights to do so.

45.     Plaintiff is entitled to damages in an amount to be proven at trial, but not less than $500,000.00, exclusive of attorneys' fees, interest, and costs.

**THIRD CAUSE OF ACTION**
**INTENTIONAL MISREPRESENTATION**
**(Against All Defendants)**

46.     Plaintiff incorporates by this reference the other allegations set forth in this Complaint.

47.     Through the Agreement, and through their principal Iehab Hawatmeh, Defendants' knowingly and falsely represented to Plaintiff:

    a.      That they had the power and authority to enter into the Agreement, pursuant to the Playboy License.

b.      That the Agreement had been duly authorized and approved by all necessary action.

c.      That in consideration for Plaintiff paying the $250,000.00 balance of the First Contract Year royalty payments in September of 2012, the Agreement would be amended such that the start date for the Agreement would be extended from June 1, 2012, to the date upon which Plaintiff procured all necessary licenses and authorizations for importing, manufacturing and distributing Playboy Energy Drink in the Territories.

d.      That the extension of the start date for the Agreement would extend the time for royalty payments and contract minimum requirements under the Agreement.

48.     At the time that Defendants made these statements, they knew that these statements were false as Play Beverages was in Chapter 11 Bankruptcy proceedings and actively engaged in the Playboy Litigation.  Pursuant to 11 U.S.C. § 363, as a debtor-in-possession, Play Beverages was required to obtain the approval of the Bankruptcy Court prior to entering into any transactions outside the normal course of business.  Play Beverages did not take any steps to obtain authorization for the Agreement from the Bankruptcy Court.

49.     Plaintiff is informed, believes and thereupon alleges that Defendants share the same principals, managers, and directors.  As such, CirTran was fully aware of the Playboy Litigation.  Further, CirTran was an active part of Play Beverages' Chapter 11 Bankruptcy proceedings as, in August of 2012, CirTran sought to sell substantially all of its assets to Play Beverages pursuant to an Asset Purchase Agreement as part of Play Beverages' Chapter 11 Plan of Reorganization.

50.     Plaintiff is informed, believes and thereupon alleges that Defendants intended that

Plaintiff rely on these statements to induce Plaintiff to enter into the Agreement and to accelerate

Plaintiff's royalty payments under the Extension Guarantee for the purpose of raising capital in

order for Defendants to make their own $2,000,000.00 royalty payment which was due to

Playboy, Inc. as of late September to early October of 2012, so as to maintain the Playboy

License.

51.     Plaintiff did in fact reasonably rely on these statements.

52.     Plaintiff has been damaged and continues to sustain damages for relying on the

Defendants' intentional misrepresentation in an amount to be determined at trial, but in no event

less than $500,000.00, exclusive of attorneys' fees, interest, and costs.

**FOURTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**

53.     Plaintiff incorporates by this reference the other allegations set forth in this

Complaint.

54.     Through the Agreement, and through their principal Iehab Hawatmeh,

Defendants' represented to Plaintiff:

a.     That they had the power and authority to enter into the Agreement,

pursuant to the Playboy License;

b.     That the Agreement had been duly authorized and approved by all

necessary action.

c.     That in consideration for Plaintiff paying the $250,000.00 balance of the

First Contract Year royalty payments in September of 2012, the Agreement would be

15

amended such that the start date for the Agreement would be extended from June 1, 2012 to the date upon which Plaintiff procured all necessary licenses and authorizations for importing, manufacturing and distributing Playboy Energy Drink in the Territories.

        d.     That the extension of the start date for the Agreement would extend the time for royalty payments and contract minimum requirements under the Agreement.

55.     Defendants' representations were not true as during the time that Plaintiff and Defendants negotiated and executed the Agreement, Play Beverages was actively engaged in the Playboy Litigation. Further, at the time that Defendants made these statements, Play Beverages was in Chapter 11 Bankruptcy proceedings. Pursuant to 11 U.S.C. § 363, as a debtor-in-possession, Play Beverages was required to obtain the approval of the Bankruptcy Court prior to entering into any transactions outside the normal course of business.  Play Beverages did not take any steps to obtain authorization for the Agreement from the Bankruptcy Court.

56.     Plaintiff is informed, believes, and thereupon alleges that Defendants share the same principals, managers and directors.  As such, CirTran was fully aware of the Playboy Litigation. Further, CirTran was an active part of Play Beverages' Chapter 11 Bankruptcy proceedings as, in August 2012, CirTran sought to sell substantially all of its assets to Play Beverages pursuant to an Asset Purchase Agreement between Play Beverages and CirTran as a part of Play Beverages Chapter 11 Plan of Reorganization.

57.     Defendants failed to use reasonable care to determine whether the representations were true.

58.     Defendants were in a better position than Plaintiff to know the true facts as they were actively involved in both the Bankruptcy Action and the Playboy Litigation.

16

59.     Defendants had a financial interest in the transaction as they received royalties under the Agreement, including an initial payment of $500,000.00 from Plaintiff.

60.     Plaintiff relied on Defendants' representation and it was reasonable for Plaintiff to do so.

61.     Plaintiff has been damaged and continues to sustain damages for relying on the Defendants' negligent misrepresentations in an amount to be determined at trial, but in no event less than $500,000.00, exclusive of attorney's fees, interest, and costs.

## FIFTH CAUSE OF ACTION
## FRAUDULENT INDUCEMENT AND CONCEALMENT
### (Against All Defendants)

62.     Plaintiff incorporates by this reference the other allegations set forth in this Complaint.

63.     The Defendants have employed a scheme designed to induce Plaintiff to enter into the Agreement and thereby defraud Plaintiff for their own benefit.  The fraudulent scheme includes the use of material misrepresentations and omissions (fraudulent concealment of material facts and of information in the Defendants' sole possession) and the fraudulent inducement to enter into the Agreement as noted herein.

64.     Specifically, Defendants, through their principal Iehab Hawatmeh, falsely represented to Plaintiff that they had the power and authority to enter into the Agreement pursuant to the Playboy License.  Defendants also falsely represented to Plaintiff that the Agreement had been duly authorized and approved by all necessary action.

65.     Defendants concealed from Plaintiff that at the time Plaintiff executed the

Agreement, Play Beverages was in Chapter 11 Bankruptcy proceedings, as well as actively

involved in the Playboy Litigation over Playboy, Inc.'s termination of the Playboy License.

66.     Defendants further concealed their involvement in the Bankruptcy Action and

Playboy Litigation from Plaintiff at the time that Plaintiff tendered $250,000.00 to Defendants

per the Extension Guarantee.

67.     With regard to each and every fact or quantum of information concealed from

Plaintiff, Defendants had a duty to disclose the material facts and information withheld from

Plaintiff.

68.     Plaintiff reasonably and justifiably relied upon Defendants' false and fraudulent

representations, actions, omissions, and concealments and, as a consequence, entered into the

Agreement to Plaintiff's detriment.

69.     The Defendants have engaged in the above described fraudulent activity

throughout the negotiation and execution of the Agreement.

70.     As a direct and proximate result of Plaintiff's detrimental reliance upon the

Defendants' false and fraudulent representations, actions, omissions and concealments, Plaintiff

has been damaged and continues to sustain damages in an amount to be determined at trial, but in

no event less than $500,000.00, exclusive of attorneys' fees, interest, and costs.

## **JURY REQUEST**

71.     Plaintiff requests that this matter be tried to a jury and tenders herewith the fee for

impaneling said jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.      For general damages in an amount to be proven at trial, but not less than

$500,000.00;

2.      For rescission of the Agreement;

3.      For special damages according to proof;

4.      For appropriate punitive damages;

5.      For those costs, fees, and expenses incurred in bringing this action;

6.      For attorneys' fees according to proof;

7.      For pre- and post- judgment interest at the highest rate allowed by law; and

8.      For such other and further relief as the Court deems just and equitable.

DATED this 25th day of February 2014.

> James E. Harward
> HARWARD & ASSOCIATES
> James E. Harward
> W. Earl Webster
> *Attorneys for the Plaintiff*